MATT WOLFE, Appellee, v. LOREN DECKER, Appellant.

No. 43259.

Helsell, Burnquist, Bradshaw & Dolliver, for appellant.

Breen & Breen, and Bell & Level, for appellee.

HAMILTON, J.—Matt Wolfe, the plaintiff, a farmer living in the vicinity of Denison, Iowa, at 1 o'clock p. m. on September 23, 1933, was moving some of his farm machinery by means of a team and wagon, upon which there was a hayrack, along United States primary highway No. 30, proceeding in a westerly direction at a point about 4 miles west of Denison, Iowa. The off horse and the north two wheels of the wagon were out on the shoulder. The nigh horse was on the paving, and, while proceeding westward with the center of the vehicle approximately over the north curb of the pavement, plaintiff observed the defendant's truck approaching him from the west at a distance of about 1,600 feet. When he first saw the truck, it was weaving back and forth across the paving. As it got closer, it straightened out and proceeded on the south side of the pavement until it reached a point about 200 feet from the team and wagon, when the truck veered to the left in a diagonal direction directly toward the team, striking the nigh horse in the breast and apparently passing entirely over the horse and rack. The collision threw the plaintiff so high in the air that he cleared the top of the truck and came down behind it on his back in the middle of the pavement and bounced over onto the dirt shoulder. The horse was killed and the machinery, wagon, and rack practically demolished.

Plaintiff was taken to the office of Dr. Brannon in Denison, and the doctor described his injuries as follows: ''He was skinned up from his head down. Some of his bruises were rather deep and the scuffing was deep. The skin was off in some places. He had a painful, swollen left arm. There was no fracture of the bone. He called at the office on several occasions

after that. I gave him a sedative to make him sleep. Two weeks following that he came in complaining of a pain in his leg and upon examination it showed that he was developing some large veins. When he first came to my office I went over his body pretty thoroughly but I did not observe any trouble with the veins in his right leg. An enlarged vein is commonly known as varicose veins. I think the injuries sustained could have caused the enlarged veins.''

■■■ The overwhelming weight of testimony shows that the driver of the truck said that he must have been asleep. There is ample evidence to sustain the verdict, and, while the defendant complains that the verdict is excessive, such complaint is without any foundation. The amount of the verdict was $1,328, and, considering the damage to the property and the character of the plaintiff's injuries, the pain and suffering and shock to his nervous system, his inability to rest and sleep soundly over a period of months, his inability to carry on his ordinary farm work, and the pain and suffering due to the injury to his leg and the possible permanent character of the varicose veins, which, under the evidence, the jury could have found was caused by the injury, we are satisfied that the verdict is not excessive.

■■■ Complaint is also made of the action of the court in permitting certain amendments to the petition filed at or about the time the trial commenced and of the action of the court in overruling a motion for continuance because of the filing of the amendments. These are matters resting largely in the discretion of the trial court, and from a careful examination of the record we are satisfied there was no abuse of this discretion and that the defendant was in no way injured or deprived of any right because of the action of the court.

■■■ Complaint is also made of the refusal of the court to strike certain testimony of the plaintiff wherein he related a conversation had with the defendant immediately after the accident. The plaintiff was asked:

''Q. And what if anything did you say and what if anything did he say? A. He asked me if I was hurt and I told him I didn't know, there was something wrong, and he said 'I have insurance' and I said 'You need something to straighten this out,' and I asked him what was wrong with him and he said that he was asleep.''

The same complaint is lodged against the testimony of the sheriff who appeared upon the scene shortly after the accident. The sheriff testified that he had a talk with Mr. Decker about an hour after the accident:

"Q. Well, just tell the jury what conversation you had with him. A. I went over and asked Mr. Decker what was the matter, had he been drinking and he says 'No,' and I says 'What was the matter, what were you doing over on this side of the highway then with your truck?' And he said 'I don't know, I guess I must have went to sleep.'

"Q. Did you have any further conversation with him. A. Nothing only that I asked if he had insurance.

"Q. I don't want to ask—

"Mr. Dolliver: Now if the court please I move to strike the answer of the witness for the reason that it is immaterial and highly prejudicial.

"Mr. Bell: I will withdraw the question. * * *

"The Court: Well, the last statement of the witness may go out by concession of counsel on both sides, and the motion aside from that will be overruled."

There is nothing in the record to show that there was any deliberate design or attempt to inject into the trial the fact that the defendant carried insurance. The matter was elicited as a part of the conversation immediately after the accident, and was in the nature of an admission, and as stated in the case of Albert v. Maher Bros. Transf. Co., 215 Iowa 197, at page 214, 243 N. W. 561, 569:

"A party to a lawsuit has a right to bring forth all relevant, material, and competent facts. Although such material, relevant, and competent facts include the suggestion that one party carries insurance, the rule is not changed. Error arises only when a party intentionally brings before the jury on an immaterial or irrelevant matter the fact that the opposite party carries insurance." See, also, Bauer v. Reavell, 219 Iowa 1212, 1218, 260 N. W. 39, 43.

■■■ Complaint is also made of the giving of instruction No. 6 defining negligence, wherein the court said: " 'Negligence' means 'carelessness.' " Instruction No. 6 is in the following language:

" 'Negligence' means 'carelessness.' By negligence is meant the want of ordinary care. It is the want of such care as an ordinarily prudent person would exercise under the same or similar circumstances. Such care is proportionate to the apparent danger involved; where the apparent danger is great, a greater care is required than where such apparent danger is slight."

It is the contention of appellant that, because we have no degrees of negligence under the rule in this state, this instruction is misleading. We think the criticism is hypercritical and is not supported by any authority.

Defendant also complains of instruction No. 7 wherein the term "prima facie" is used; the specific complaint being that the court did not tell the jury the meaning of this term, the language complained of being as follows:

"To be more specific, if you find by a preponderance of the evidence that the defendant in this case, in meeting and passing plaintiff, failed to keep on his right hand or south side of the pavement, but drove his truck across the center line and into the plaintiff's horses and wagon as charged, thereby causing the damage complained of by plaintiff, then the defendant's violation of the statute I have just quoted would be prima facie evidence of negligence on his part. That is to say, the jury would have a right to infer, after taking into consideration all the surrounding circumstances shown in evidence, that such violation of the statute was negligence on the defendant's part."

When considered in connection with the entire instruction, there is no merit to defendant's complaint.

Appellee moved to dismiss appellant's appeal, but, in view of the result reached, it is unnecessary for us to pass on the matter presented by this motion, and the same is overruled.

There being no reversible error, the cause must be, and it is, affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, ANDERSON, KINTZINGER, MITCHELL, PARSONS, RICHARDS, and STIGER, JJ., concur.